IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
                                  :
ROBERT L. COMMODORE, JR.
                                  :

    v.                            :     Civil Action No. DKC 2007-0661

                                  :

CALVERT COUNTY BOARD OF
 COUNTY COMMISSIONERS, ET AL. :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case is a motion to dismiss by Defendant Calvert County Board of County Commissioners ("Calvert County"). (Paper 6). Also pending is a motion by Defendants Sheriff Michael Evans and Deputy Sheriff Joseph Windsor for partial dismissal, or for bifurcation. (Paper 7). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the claims against Deputy Windsor in his official capacity and all claims against Sheriff Evans and Calvert County will be dismissed.

**I.  Background**

Robert L. Commodore, Jr., Plaintiff, filed a seven count complaint against the Calvert County Board of County Commissioners, Sheriff Michael Evans and Deputy Sheriff Joseph Windsor, individually and in their official capacities. He alleges that on the evening of January 10, 2007, he was driving north on Solomon's Island Road when Deputy Windsor pulled him over and questioned him

about the car's tags.  Although Plaintiff informed Windsor that he had registered the car earlier that morning, Windsor was unable to confirm the veracity of Plaintiff's statements until Plaintiff provided him with information for the car's previous owner. Plaintiff alleges that Deputy Windsor then asked him to step out of the car and told him that he was "going to search your vehicle for all the bullshit you put me through." (Paper 1, at 4).  Plaintiff refused to consent to the search of his car.  In response, Deputy Windsor is alleged to have hollered, "I don't give a fuck what you say, because I have my dog and I will put him in the car." Plaintiff feared for his safety and attempted to "exit the situation by foot." (*Id.*).  Windsor then yelled, "I'm gonna shoot you" and then shot Plaintiff in his upper back. (*Id.*).  The bullet severely wounded Plaintiff who fell to the ground where he remained until Windsor kneed him twice in the back, cursed at him, and eventually rolled him on his stomach and handcuffed him.  Plaintiff alleges that other police officers arrived on the scene and joined Windsor in yelling profanities at Plaintiff.  According to Plaintiff, Windsor initially refused to allow paramedics to access Plaintiff in order to treat his wounds.

Plaintiff asserts that Deputy Windsor's actions constitute unreasonable and excessive use of force, a deprivation of liberty and imposition of punishment, without due process of law.  In addition, the complaint alleges: "Upon information and belief at

all times pertinent hereto, Defendant Calvert County Board of County Commissioners and Defendant Evans permitted and tolerated a pattern and practice of unreasonable use of force, punishment and deprivation of Constitutional Guarantees by Deputy Windsor, so they could affect (sic) an arrest." (Paper 1, at 6).  It also alleges that Calvert County and Evans "maintain a system of review of sheriff's deputy conduct . . . which is so untimely, cursory, one-sided and ineffective that the unreasonable and excessive use of force, punishment and denial of Constitutional rights by its deputies is permitted and tolerated in a wholesale manner, against citizens of color in Calvert County." (*Id.*).

Count I is brought under 42 U.S.C. § 1983 for "intentional coercion, intimidation, assault and battery" against all defendants.  Count II asserts a violation of Plaintiff's constitutional due process rights because Sheriff Evans and Calvert County maintained a policy of authorizing and covering up abuses by deputies.  Count III is a state law claim for assault and battery. Count IV is a state law claim for intentional infliction of emotional distress.  Count V is a state law claim alleging that "Deputy Windsor used the criminal process against Plaintiff in order to cover up their (sic) own wrongdoing. . . .".  Count VI is a state law claim for "false detention" or imprisonment.  Count VII is a race-based civil rights claim.

Defendant Calvert County moves to dismiss all the claims against it, and also adopts Sheriff Evans's and Deputy Windsor's arguments in favor of bifurcation as an alternative. (Paper 6). The primary basis for Calvert County's motion to dismiss is that the sheriff is a state official, not a county official, and that the mere fact that the County may fund the office does not make it liable for any alleged misdeeds of the sheriff's office. Further, the County contends that the complaint fails to allege sufficient facts to make out a claim under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

Defendants Sheriff Evans and Deputy Windsor move for partial dismissal or, in the alternative, bifurcation. (Paper 7). They seek dismissal of all claims against them in their official capacity and the claims against Sheriff Evans in his individual capacity. (*Id.*).

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

4

Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 n.3 (2007).  That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  The court must disregard the contrary allegations of the opposing party.  *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).  The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  In sum, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965 (internal citations omitted).

**III. Analysis**

Sheriff Evans and Deputy Windsor contend that the federal official capacity claims against them should be dismissed because, when performing law enforcement duties, they are state officials, and not "persons" within the meaning of 42 U.S.C. § 1983, citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). Calvert County contends that, despite the allegations in the complaint that the Board of County Commissioners is the controlling authority over the Sheriff's Office, the Sheriff is a state official, and not a municipal official. Thus, the County Board could not have any control over Deputy Windsor's law enforcement actions. In addition, Calvert County argues that the complaint is devoid of allegations sufficient to state a claim under *Monell.* Plaintiff's opposition does not address at all the contention that the Sheriff is a state official, and not subject to regulation by the Board of County Commissioners.

Claims for monetary damages against a state official sued in his or her official capacity are not suits against a person, and hence are not authorized by section 1983. *Will*, 491 U.S. at 71. A Maryland sheriff sued under section 1983 in his or her official capacity may be either a state official or a county official, depending upon the particular duties and circumstances upon which the suit is based. *Dotson v. Chester*, 937 F.2d 920, 928 (4th Cir.

1991).[1]  In *Dotson*, the Fourth Circuit held that a sheriff could be an agent of county government with respect to section 1983 claims related to conditions in an aging county jail the sheriff operated under the authority of, and with funding provided by, the county. *Id.* at 930.  The *Dotson* court analyzed an earlier Maryland case, which held that a sheriff and sheriff's deputies were state officials for purposes of Maryland tort law while engaging in the statewide enterprise of law enforcement.  *Rucker,* 316 Md. at 278, 281.  According to the allegations in the complaint, Deputy Windsor, like the sheriff's deputies in *Rucker*, was involved in the statewide duty of law enforcement at the time he encountered Plaintiff and allegedly violated his civil rights.[2]  Likewise, the official capacity claims against Sheriff Evans are treated as a claim against the state and therefore are not cognizable in a section 1983 suit for damages.  Accordingly, Defendants' motion to dismiss the official capacity claims against Deputy Windsor and Sheriff Evans will be granted.

---

[1] Presumably, the same analysis applies to a sheriff's deputy sued in his or her official capacity.  *See Rucker v. Harford County*, 316 Md. 275, 281 (1989) (holding with respect to Maryland tort law status that deputy sheriff, like a sheriff, is a state employee because he "functions as the alter ego of the sheriff"), *superseded by statute as recognized by* 104 Md.App. 439, 443-44 (Md.Ct.Spec.App. 1995).

[2] Plaintiff names Deputy Windsor as a Defendant in both his individual and official capacities for all counts, including the state tort claims.  Maryland common law claims, however, do not distinguish between individual capacity and official capacity claims.  *Ritchie v. Donnelly*, 324 Md. 344, 374-75 (1991).

Calvert County similarly asserts that the sheriff's office is a state, and not a county, agency, and that Plaintiff's conclusory allegations about control over the sheriff's office are insufficient. Plaintiff's lengthy opposition memorandum does not respond to this argument. Under Maryland law, sheriffs and deputy sheriffs are considered employees of the state. *See McGrath-Malott v. Maryland*, No. 06-879, 2007 WL 609909, at *5 (D.Md. 2007). Sheriffs and Deputy Sheriffs are covered as state personnel under the Maryland Tort Claims Act, Md.Code. Ann., State Gov't § 12-101(a)(6), and the Sheriff is empowered to hire and fire Deputy Sheriffs, Md.Code Ann., Cts. & Jud. Proc. § 2-309(w)(2)(ii). In sum, "as a matter of Maryland law, the Sheriff and Deputy Sheriffs of [a Maryland County] are officials and/or employees of the State of Maryland rather than of [the] County." *Willey v. Ward*, 197 F.Supp.2d 384, 387-88 (D.Md. 2002) (quoting *Rucker*, 558 A.2d at 402). Because Deputy Windsor and Sheriff Evans are state, and not county, officials, Calvert County cannot be held liable for their acts. Accordingly, the motion to dismiss the claims against Calvert County will be granted.

Sheriff Evans also seeks dismissal of the claims against him in his personal capacity. Plaintiff alleges that Evans "endorsed, condoned and acquiesced" in Plaintiff's shooting in that he "failed to take action when he became aware of the incident" and "failed to condone (sic) the practice used by Deputy Windsor. . . ." (Paper

1 ¶ 37).   In the complaint's second count, Plaintiff asserts that Evans authorized some of his deputies, including Windsor, to cover up their constitutional violations and states that these actions "encouraged and caused" violations of Plaintiff's rights. Plaintiff offers no more specific allegations with regard to Sheriff Evans's conduct.   Plaintiff also asserts that Evans tolerated the abusive practices of his deputies, maintained an ineffective system of review of their conduct, that these failings made it "more likely" that Deputy Windsor would use excessive and unreasonable force against him.

To survive a motion to dismiss, a complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct at 1965 (citing *Papasan*, 478 U.S. at 286).   While the court must construe all factual allegations in the light most favorable to the plaintiff, *Harrison*, 176 F.3d at 783, it need not accept conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters*, 604 F.2d at 847.   Only Plaintiff's allegations that Evans "failed to take action when he became aware of the incident" and that he "failed to condone (sic) the practice used by Deputy Windsor" present more than mere conclusory factual allegations.

The Supreme Court has directed that "[r]espondeat superior or vicarious liability will not attach under § 1983." *Canton v.*

9

*Harris*, 489 U.S. 378 (1989). There are three elements required for supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984); *Shaw v. Stroud* 13 F.3d 791, 799 (4th Cir. 1994). To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. *Id.* Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.

A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." *Id.* at 373. The plaintiff assumes

a heavy burden of proof in establishing deliberate indifference
because:

> [o]rdinarily, [the plaintiff] cannot satisfy
> his burden of proof by pointing to a single
> incident or isolated incidents, for a
> supervisor cannot be expected to promulgate
> rules and procedures covering every
> conceivable occurrence within the area of his
> responsibilities. Nor can he reasonably be
> expected to guard against the deliberate
> criminal acts of his properly trained
> employees when he has no basis upon which to
> anticipate the misconduct. A supervisor's
> continued inaction in the face of documented
> widespread abuses, however, provides an
> independent basis for finding he either was
> deliberately indifferent or acquiesced in the
> constitutionally offensive conduct of his
> subordinates.

*Slakan*, 737 F.2d at 372-73 (citations omitted)).

Causation is established when the plaintiff demonstrates an
"affirmative causal link" between the supervisor's inaction and the
harm suffered by the plaintiff. *Slakan*, 737 F.2d at 376. In
*Slakan*, the Fourth Circuit noted that the "proof of causation may
be direct . . . where the policy commands the injury of which the
plaintiff complains . . . [or] may be supplied by [the] tort
principle that holds a person liable for the natural consequences
of his actions." 737 F.2d at 376.

Plaintiff does not assert that Sheriff Evans actually saw the
incident between Deputy Windsor and him and he does not claim that
Evans directly participated in the event. Nor can Plaintiff
establish supervisory liability under § 1983. Plaintiff has failed

11

to allege that Evans had actual or constructive knowledge of the incident between Deputy Windsor and him, so he has failed to adequately allege prong one of the *Shaw* test. *De Ventura v. Keith*, 169 F. Supp. 2d 390 (D.Md. 2001) (Police Officer supervisor of officer who arrested the plaintiff did not have actual or constructive knowledge that his subordinate was engaged in conduct that posed pervasive and unreasonable risk of constitutional injury, as required to support supervisory liability under § 1983). Plaintiff did not allege that Evans was aware of past misbehavior by Deputy Windsor, that any such misconduct was pervasive, unreasonable, or widespread, or any facts which would support his theory of causation.   Plaintiff failed to allege any specific facts about Sheriff Evans's conduct prior to the shooting.   Events that occur later are irrelevant and Plaintiff failed to point to a single incident of prior misconduct, which would still fail to satisfy the burden under *Slakan*. 737 F.2d at 373.   Plaintiff has only alleged conclusory factual allegations devoid of reference to actual events.   Accordingly, Plaintiff's claims against Sheriff Evans in his individual capacity will be dismissed.

**IV.   Conclusion**

For the forgoing reasons, the official capacity claims asserted against Sheriff Evans and Deputy Windsor, the *Monell* claims against Calvert County, and the individual capacity claims against Sheriff Evans will be dismissed.  The request to bifurcate is moot.  A separate Order will follow.


_____/s/_____

DEBORAH K. CHASANOW
United States District Judge